IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 2, 2010

**STATE OF TENNESSEE v. DEANGELO SEVIER**

**Appeal from the Criminal Court for Shelby County**
**No. 06-09190     James C. Beasley, Jr., Judge**

---

**No. W2009-00172-CCA-R3-CD  -  Filed March 9, 2010**

---

Appellant, Deangelo Sevier, was convicted by a Shelby County jury of felony murder and attempted especially aggravated robbery for an incident that occurred when Appellant was seventeen years old.  As a result, he was sentenced to life in prison for the felony murder and ten years for the attempted especially aggravated robbery.  Appellant appeals his conviction, arguing: (1) the trial court erred by denying the motion to dismiss the indictment where a recording of the juvenile transfer hearing was unavailable; (2) the trial court erred by denying the motion to suppress Appellant's statement; (3) the evidence is insufficient to support the conviction for felony murder; and (4) the cumulative effect of the errors denied Appellant due process.  After a thorough review of the record, we conclude that the trial court correctly denied the motion to dismiss the indictment and the motion to suppress.  Further, the evidence is sufficient to support Appellant's felony murder conviction.  Accordingly, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed**

JERRY L. SMITH, J., delivered the opinion of the court, in which J.C. MCLIN and CAMILLE R. MCMULLEN, JJ., joined.

C. Anne Tipton, Memphis, Tennessee, for the appellant, Deangelo Sevier.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William L. Gibbons, District Attorney General, and Dean Decandia, Assistant District Attorney General for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

On the morning of May 13, 2006, the Memphis Police Department responded to a report made by an off-duty police officer of a "man down" at 3896 Lamar, the location of the 78 Motel. Upon investigation, police located three men who had been shot. Darryl Smith and Jarrett Robinson were dead and the third, Regie Renfroe, was severely wounded. After an investigation, Appellant was identified as a suspect in the murder of Darryl Smith. At the time of his arrest, Appellant was seventeen years old.

In June of 2006, the Shelby County Juvenile Court conducted a juvenile transfer hearing concerning the allegations against Appellant. After the hearing, Appellant was transferred to criminal court for prosecution as an adult. Subsequently, Appellant, along with Tosha Taylor and Lakeysha Hill, were indicted by the Shelby County Grand Jury in November of 2006 for first degree felony murder and attempted especially aggravated robbery

Prior to trial, Appellant filed a motion to dismiss the indictment. In the motion, Appellant alleged that there was no recording preserved of the juvenile transfer hearing. According to Appellant, "the hearing was presumably properly recorded, [but] the computer hard drive containing the electronic recording malfunctioned and all information contained thereon was lost." Appellant asked the trial court to dismiss the indictment and remand the matter to the juvenile court for a new transfer hearing. The trial court denied the motion after a hearing.

Prior to trial Appellant also sought to suppress his statement to police. Appellant argued that his statement was obtained in violation of his constitutional rights, that he was coerced into making the statement, that he was under the influence of drugs at the time the statement was made, and that the statement was "secretly filmed by a mass media production organization without [Appellant's] consent . . . ."

The trial court held a hearing on the motion to suppress the statement. At the hearing, Sergeant William Merritt testified that he participated in the investigation of the attempted robbery that resulted in the murder of Darryl Smith and injuries to Regie Renfroe.

Sergeant Merritt informed the trial court that he responded to the crime scene around 9:00 a.m. on the morning of May 13, 2006. Sergeant Merritt met two females, Lakeysha Hill and Tosha Taylor, who were witnesses to the crimes. Concerned that Appellant may have

been shot, a family member of Appellant was also present. Ms. Hill and Ms. Taylor were interviewed and implicated themselves and Appellant in the crimes.

Appellant was arrested several days later. At the time of his arrest, Appellant was seventeen years of age. Appellant was escorted to an interview room at the homicide office and officers waited until Appellant's mother arrived before beginning the interview. Both Appellant and his mother were offered food and drink, and Appellant was advised of his *Miranda* rights. The officers explained the advice of rights form to both Appellant and his mother. Appellant informed the officers that he had gone to school through the ninth grade and was able to read and write. In order to confirm this, Officer Merritt asked Appellant to read from the advice form. Appellant confirmed that he could read without difficulty. Both Appellant and his mother signed the form. Sergeant Merritt did not think that Appellant was under the influence of alcohol or drugs at the time of the interview.

The officers told Appellant that they were aware he was at the hotel when the incident occurred. Appellant began by telling the officers that he and Jarrett Robinson went to the hotel together. According to Appellant, only Mr. Robinson had a gun. When they entered room "120 something" the men inside attempted to rob Appellant and Mr. Robinson at gunpoint. Appellant stated that shots were fired and he fled the scene when he saw that Mr. Robinson had been shot and killed. The officers told Appellant that they did not believe his story because they had already interviewed Ms. Taylor and Ms. Hill who had implicated Appellant and Mr. Robinson in a plot to rob the two men who were at the hotel. The officers also told Appellant at that time that they had recovered at least two handguns from the scene that were going to be fingerprinted.

Once confronted with these facts, Appellant admitted his involvement in the crimes by telling officers that he and Mr. Robinson went to the hotel to rob the two men. Appellant stated that the women encouraged the men to perpetrate the robbery because the men in the hotel room had drugs and money.

After Appellant admitted his involvement, the officers took a taped statement from Appellant. Sergeant Merritt testified at the suppression hearing that Appellant was not threatened or coerced into giving the statement and did not invoke his right to counsel during the interview.

Appellant testified at the suppression hearing. According to Appellant, he signed the advice of rights form even though he did not understand what it said. Appellant claimed that he smoked marijuana immediately before he was arrested. Appellant also stated that marijuana makes him "dumb" and that he has problems understanding things when he is

high. Appellant admitted that he did not ask for an attorney during the interview, but claimed that he was unaware that he had the right to ask for an attorney.

At the conclusion of the hearing, the trial court determined that Appellant was able to comprehend his rights and that Appellant had the mental capability to understand the form. Additionally, Appellant's mother was present and there was no indication that she was incompetent. The trial court found that Appellant was not so impaired by the marijuana that he did not understand his rights and that the police "protected" Appellant's rights by providing him with the proper warnings prior to the statement. In other words, the trial court determined that the statement was "freely and voluntarily [given] . . . without threats, intimidation, coercion, forces of any kind, in full knowledge of what his rights were . . . ." The trial court denied the motion to suppress.

The case proceeded to trial. At trial, there was testimony from Darryl Smith's mother, Mary Woods. Mrs. Woods testified that her son lived in Dallas, Texas at the time of his death and had flown to Memphis the weekend of May 13, 2006, to pick up his children for the summer.

Regie Renfroe testified that he was at William Chamberlain's house on May 13, 2006, with Darryl Smith, Chamberlain's two roommates, and Mr. Renfroe's cousin. Mr. Renfroe went to high school with Mr. Smith. The men spent the night playing cards, drinking, smoking marijuana, and gambling.

According to Mr. Renfroe, around 3:30 or 4:00 a.m., a girl named "Jaz"[1] and her friend, "Tosha" Taylor, came in to the house. Mr. Chamberlain opened the garage door so that the girls could come inside the house. Mr. Renfroe was under the impression that Ms. Taylor had been staying with Mr. Chamberlain for about a month. When the girls first came into the house, they walked to the back of the house with Mr. Chamberlain. The entire time they were in the house, Ms. Taylor was on the phone with someone and was looking around and acting like she had never been there before. Mr. Renfroe noticed that the girls had arrived at the house in a Red Jeep Liberty with tinted windows. There were two men inside the vehicle.

After the girls left, Mr. Renfroe asked Mr. Chamberlain what they wanted. He claimed that he had no idea. About an hour later, Ms. Taylor called Mr. Chamberlain and asked him to come and pick her up at the Motel 78 on Lamar. Because Mr. Chamberlain did not have a vehicle, he asked Mr. Renfroe to go pick her up at the hotel. Mr. Renfroe was not

---

[1]"Jaz" was later identified as Lakeysha Hill.

interested until Ms. Taylor offered him some gas money. Darryl Smith rode with Mr. Renfroe to the hotel because he needed a ride home.

When they arrived at the hotel, Mr. Renfroe called inside the hotel and asked Ms. Taylor to come outside. Ms. Taylor asked Mr. Renfroe to come inside and wait because she was not ready yet. Mr. Renfroe and Mr. Taylor exited their vehicle and walked to Room 123 and knocked on the door. Ms. Taylor answered the door and told the men to wait for a second. Mr. Smith and Mr. Renfroe stepped inside the room. Mr. Renfroe said that someone else then knocked on the door. When Ms. Taylor answered the door, a girl was standing there. Then, almost immediately, Appellant entered the room shooting a gun and demanding money. Mr. Renfroe was startled and began "tussling" with Appellant while Appellant continued to fire the gun. Mr. Renfroe was shot in the chest and managed to push Appellant aside and run out the door. Mr. Smith was still in the room and was shot and killed.

Mr. Renfroe could still hear shots as he ran out of the room. He managed to make it to the parking lot before collapsing on the ground. Mr. Renfroe remained in the hospital for over a month and underwent several extensive surgeries as a result of the shooting.

Officer Thomas Woods responded to the scene after an off-duty police officer reported that there was a man down at Hotel 78. Officer Woods saw Mr. Renfroe lying on the ground and noted that he had been shot. When he arrived in the room, Officer Woods smelled gunpowder and saw smoke. There was a deceased individual lying in the hallway and another deceased individual lying in the hotel room. The victims were identified as Darryl Smith and Jarrett Robinson.

During the investigation, Sergeant Merritt interviewed Ms. Taylor and Ms. Hill. The information gleaned from their statements led authorities to develop Appellant as a suspect. The women were also developed as suspects.

Appellant was arrested three days later on May 16, 2006. Appellant was transported to the police department but was not interviewed until his mother arrived because he was a juvenile. In his taped statement, Appellant informed authorities that Ms. Hill and Ms. Taylor wanted him and Jarrett Robinson to rob some men because they were drug dealers and had money. Mr. Robinson gave Appellant a small black nine millimeter gun. Ms. Taylor and Ms. Hill showed Appellant and Mr. Robinson where the men lived. The women went into the house, Mr. Chamberlain's house, and came out after a few minutes. Appellant said that they then dropped the girls off at the truck stop before going to the hotel. When they eventually all got to the hotel, one of the women stayed with them. While they were inside

Room 123, a girl named "Moesha"[2] knocked on the door. Then a man hit Appellant and Mr. Robinson shot the man who hit Appellant. Appellant informed the officers that he was standing outside the hotel room in the hallway when Mr. Robinson came out of the room and fell. Appellant claimed that he fired his gun three to five times and was not in the room when Mr. Robinson fired his weapon. Appellant left his gun at the hotel and fled the scene in the Red Jeep Liberty. Appellant went to Mr. Robinson's wife's house.

Sergeant Merritt emphasized in his testimony that Appellant admitted going to the hotel for the purpose of committing a robbery. Further, Appellant admitted that he shot his gun three to five times at the hotel.

Appellant testified at trial. According to Appellant, he was seventeen years old at the time of the incident. Appellant was living with Mr. Robinson at the time. Mr. Robinson sold drugs, robbed people, and was a "pimp." Mr. Robinson moved around almost every day, staying with different women. Appellant testified that on May 13, 2006, at around 2:00 a.m., he went to the home of Janice Williams. Mr. Robinson later came to get Appellant. Mr. Robinson took three guns with him, and gave one of the guns, a nine millimeter, to Appellant. The men stopped at several truck stops so that Mr. Robinson could collect money from his prostitutes. The men picked up Ms. Hill and Ms. Taylor, who directed them to Mr. Chamberlain's house. The women went inside. While they were inside, Ms. Hill called Mr. Robinson on the phone, telling him there were too many men inside the house. Mr. Robinson informed Appellant that they were planning to rob Mr. Renfroe. When the four individuals left the house, they went to the hotel.

Appellant stated at trial that when they arrived at the hotel, the women got out of the car and used money provided by Mr. Robinson to rent a room. The men drove around to the back of the hotel and went into the side entrance. First, Mr. Robinson and Appellant went to Room 107, where Moesha was sitting on the couch. Ms. Hill and Ms. Taylor later came into the room.

Ms. Taylor got a call from Mr. Renfroe, informing her that he was at the hotel. At that point, Appellant claimed that Ms. Taylor went to another room in the hotel. Mr. Robinson told Appellant that the robbery was still on. Ms. Taylor called a few minutes later to tell Mr. Robinson and Appellant that she was ready and that Mr. Renfroe had another man, Darryl Smith, with him. Appellant claims that he stood in the hallway outside Room 123 while Moesha came down and knocked on the door. When the door opened, Appellant admitted that he burst into the room with his pistol drawn. Appellant demanded money from the occupants of the room. Before he knew it, Appellant was hit by someone. Appellant

---

[2]"Moesha" was never located.

struggled with Mr. Renfroe but denied shooting him or firing his gun. Appellant testified that Mr. Robinson entered the room at that time and shot Mr. Renfroe in the side.

Appellant testified that the original plan was for Mr. Robinson to rob Mr. Renfroe. Appellant claimed that he did not see Mr. Smith in the room and did not see Ms. Taylor in the room after she opened the door. According to Appellant, Mr. Robinson shot Mr. Renfroe. After Mr. Renfroe was shot, Appellant saw him run out of the room. Mr. Robinson told Appellant to chase him, so Appellant left the room chasing after Mr. Renfroe. Appellant shot at him and did not know if he hit Mr. Renfroe with any of the shots. Appellant turned around and went back to the room when he ran out of bullets. Appellant did not go inside because when he approached the room, Mr. Robinson stumbled out of the room and fell. Appellant realized at that point that Mr. Robinson had been shot.

At that time, Appellant went back to Room 107 to tell the girls what had happened. Ms. Hill called 911. Appellant went to Room 123 to get the keys to the vehicle when he realized that Mr. Robinson was dead. Appellant testified that he gave his gun to Ms. Taylor and left in the Jeep.

At the conclusion of the proof, the jury convicted Appellant of felony murder and attempted especially aggravated robbery. As a result, he was sentenced to life in prison for the felony murder and ten years for the attempted especially aggravated robbery. Appellant appeals, arguing that the trial court erred by denying the motion to suppress his statement and a motion to dismiss the indictment. Additionally, Appellant argues that the evidence was insufficient to support the conviction for felony murder.

*Analysis*
*Motion to Dismiss Indictment*

Appellant argues on appeal that the trial court erred in denying the motion to dismiss the indictment where there was no recording of the juvenile transfer hearing. In his argument, Appellant compares the right of a juvenile to a full and fair transfer hearing to the right of an adult to a preliminary hearing. Appellant recognizes that the "legislature has not established a remedy for the failure of the juvenile court to properly record and preserve an audio recording of the transfer hearing" but urges this Court to hold that *State v. Graves*, 126 S.W.3d 873 (Tenn. 2003), provides guidance that the proper remedy would be dismissal of the indictment and remand of the matter to the lower court. The State, on the other hand, argues that the dismissal of the indictment was not the proper remedy where the State "established that all material and substantial evidence introduced at the transfer hearing was made available to [Appellant] at the trial level and was subject to cross-examination."

At the time of the incidents that gave rise to the indictment herein, Appellant was seventeen years of age. Prior to indictment, the trial court held a juvenile transfer hearing in order to determine whether Appellant was to be tried as an adult. According to Tennessee Code Annotated section 37-1-134(f)(2):

> In any county in which, on July 1, 1996, the general sessions court or juvenile court makes audio recordings, the court *shall* make or cause to be made an audio recording of each transfer hearing conducted pursuant to this section. Such recording shall include all proceedings in open court and such other proceedings as the judge may direct and shall be preserved as a part of the record of the hearing. The juvenile who is the subject of the hearing may, at the juvenile's own expense, transcribe the recording of the hearing and a transcript so prepared may be used for the purpose of an appeal as provided by law. In all other counties, transfer hearings shall be recorded using the procedure provided in title 40, chapter 14, part 3.

(emphasis added).

Prior to trial, Appellant filed a motion to dismiss the indictment. According to the record provided herein, the testimony from the Assistant District Attorney who conducted the transfer hearing and the testimony from Appellant's counsel at the transfer hearing both indicated that the hearing was recorded. However, due to a change in the computer system of the juvenile court, the recording of Appellant's hearing was lost. The Assistant District Attorney explained that Sergeant Merritt of the Memphis Police Department testified at the hearing as the probable cause witness. Sergeant Merritt read Appellant's statement to police into evidence. The medical examiner's report was also introduced at the hearing. The report concluded that the victim's death was the result of a homicide. Counsel for Appellant had an opportunity at the hearing to cross-examine Sergeant Merritt. Appellant's counsel also testified. He admitted that he had the opportunity to cross-examine Sergeant Merritt at the hearing. The trial court denied the motion to dismiss the indictment on the basis that probable cause was established by Appellant's statement.

On appeal, Appellant argues that the application of *State v. Graves*, 126 S.W.3d 873 (Tenn. 2003), mandates a dismissal of the indictment in this case due to the State's failure to comply with the recording requirement. First, Appellant likens a juvenile transfer hearing to a preliminary hearing. This is accurate at least with regard to the issue of probable cause. *See State v. Womack*, 591 S.W.2d 437, 443 (Tenn. Crim. App. 1979). In *Graves*, the case relied upon by Appellant, the preliminary hearing rather than a juvenile transfer hearing, was not recorded as required by Tennessee Rule of Criminal Procedure 5.1(a). 126 S.W.3d at 875. The trial court denied the defendant's motion to dismiss the indictment. *Id.* On

intermediate appeal, this Court determined that the failure to produce a recording of the preliminary hearing was error, but that the error was harmless. *Id.* at 876. On appeal to the supreme court, the court determined that "automatic dismissal of the indictment is not required" in cases where the recording requirements of Rule 5.1(a) are unobserved. *Id.* at 877. However, our supreme court stated:

> [T]he failure to preserve an electronic recording or its equivalent of a preliminary hearing under Rule 5.1(a) requires the dismissal of the indictment and a remand for a new preliminary hearing *unless* the State establishes (1) that all material and substantial evidence that was introduced at the preliminary hearing was made available to the defendant and (2) that the testimony made available to the defendant was subject to cross-examination.

*Id.* at 877-88 (citing *State v. Bolden*, 979 S.W.2d 587, 590 (Tenn. 1998) (footnote omitted)) (emphasis in original).

Applying the standard in *Graves* to the case herein, the testimony from the hearing on the motion to dismiss establishes that the same information presented at the juvenile transfer hearing was made available to Appellant prior to trial. Further, in Appellant's case, unlike *Graves*, the probable cause determination was made based primarily on Appellant's own statement to police. The evidence introduced at the hearing was available to Appellant through discovery and there was no testimony provided at the juvenile transfer hearing that was not subject to cross-examination by Appellant. Therefore, the trial court properly denied the motion to dismiss the indictment despite the State's inadvertent failure to preserve a recording of the juvenile transfer hearing.

*Motion to Suppress*

Appellant next argues that the trial court erred in denying his motion to suppress his statements to authorities. According to Appellant, his statements were "the product of undue force and coerciion [sic] by the policing authorities due to [Appellant's] intoxication." The State, on the other hand, argues that the record does not support Appellant's claim and that he is, therefore, not entitled to relief.

Our standard of review for a trial court's findings of fact and conclusions of law on a motion to suppress evidence is set forth in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id.* at 23. As is customary, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v.*

*Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). Nevertheless, this Court reviews de novo the trial court's application of the law to the facts, without according any presumption of correctness to those conclusions. *See State v. Walton*, 41 S.W.3d 775, 81 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999).

The Fifth Amendment to the United States Constitution provides in pertinent part that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Similarly, Article I, Section 9 of the Tennessee Constitution states that "in all criminal prosecutions, the accused shall not be compelled to give evidence against himself." Tenn. Const. art. I, § 9. However, an accused may waive this right against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436 (1966). In *Miranda*, the United States Supreme Court held that a suspect "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Id.* at 479. The Supreme Court held that a suspect may knowingly and intelligently waive the right against self-incrimination only after being apprised of these rights. *Id.* Accordingly, for a waiver of the right against self-incrimination to be constitutionally valid, the accused must make an intelligent, knowing, and voluntary waiver of the rights afforded by *Miranda*. *Id.* at 444. In considering the totality of the circumstances a court should consider:

> [T]he age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse.

*State v. Huddleston*, 924 S.W.2d 666, 671 (Tenn. 1996) (citing *State v. Readus*, 764 S.W.2d 770, 774 (Tenn. Crim. App. 1988)). However, no single factor is necessarily determinative. *State v. Blackstock*, 19 S.W.3d 200, 208 (Tenn. 2000) (citing *Fairchild v. Lockhart*, 744 F.Supp. 1429, 1453 (E.D. Ark. 1989)). Further, "[a] trial court's determination that a confession was given knowingly and voluntarily is binding on the appellate courts unless the defendant can show that the evidence preponderates against the trial court's ruling." *State v. Keen*, 926 S.W.2d 727, 741 (Tenn. 1994).

-10-

A court may conclude that a defendant voluntarily waived his rights if, under the totality of the circumstances, the court determines that the waiver was uncoerced and that the defendant understood the consequences of waiver. *State v. Stephenson*, 878 S.W.2d 530, 545 (Tenn. 1994). In order to be considered voluntary, the statement "must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." *Bram v. United States*, 168 U.S. 532, 542-43 (1897); *see also State v. Kelly*, 603 S.W.2d 726, 727 (Tenn. 1980). However, "[a] defendant's subjective perception alone is not sufficient to justify a conclusion of involuntariness in the constitutional sense." *State v. Smith*, 933 S.W.2d 450, 455 (Tenn. 1996). Instead, "'coercive police activity is a necessary predicate to finding that a confession is not voluntary . . . .'" *Id.* (quoting *State v. Brimmer*, 876 S.W.2d 75, 79 (Tenn. 1994)).

In the case herein, we determine that Appellant has failed to establish that the evidence preponderates against the trial court's determination that the statement was freely and voluntarily given. Sergeant Merritt testified that Appellant agreed to talk to him and made his statement in a free and voluntary manner. Appellant's mother was present the entire time that Appellant was being questioned. Further both Appellant and Sergeant Merritt confirmed that Appellant was *Mirandized* at the beginning of the interrogation and that Appellant never requested an attorney. Appellant admitted that he gave the statement freely and voluntarily. Appellant testified that he felt that he was intoxicated because of his recent marijuana use but provided no testimony that he was so intoxicated that his waiver was involuntary. Further, Sergeant Merritt did not think that Appellant appeared intoxicated. After hearing the evidence, the trial court determined that Sergeant Merritt was credible; that he advised Appellant of his rights; that there was no evidence that Appellant was coerced, threatened, intimidated; or that the police in any other way violated Appellant's constitutional rights against self-incrimination. This Court has previously upheld the denial of a motion to suppress a statement given to police by a juvenile where the evidence does not preponderate against the trial court's finding that the statement was knowingly, voluntarily, and intelligently made. *See State v. Rodney Southers*, No. E2004-01136-CCA-R3-CD, 2005 WL 780174, at *6 (Tenn. Crim. App., at Knoxville, Apr. 7, 2005), *perm. app. denied*, (Tenn. Oct. 24, 2005). In the case herein, the evidence does not preponderate against the judgment of the trial court. The trial court was the party responsible for assessing the credibility of the witnesses as well as resolution of conflicts in the evidence. *Odom*, 928 S.W.2d at 23. Appellant is not entitled to relief on this issue.

*Sufficiency of the Evidence*

Lastly, Appellant challenges the sufficiency of the evidence with regard to his conviction for felony murder. Specifically, he argues that the evidence at trial established that the co-defendant fired the fatal shot at the victim after Appellant left the area. Further,

Appellant argues that "the only conclusion any rationale [sic] trier of fact could draw from the testimony is that the shooting and killing was separate and apart from the attempted robbery." The State disagrees, arguing that "because the murder occurred in perpetration of an attempted especially aggravated robbery and not collateral to it, the evidence was sufficient" to support the conviction for felony murder.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the "State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from reweighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions of witness credibility, the weight and value of evidence, and resolution of conflicts in the evidence are entrusted to the trier of fact. *Odom*, 928 S.W.2d at 23.

Felony murder is "[a] killing of another committed in the perpetration of or attempt to perpetrate any first degree murder, act of terrorism, arson, rape, robbery, burglary, theft, kidnapping, aggravated child abuse, aggravated child neglect or aircraft piracy." T.C.A. § 39-13-202(a)(2). Tennessee Code Annotated section 39-13-202 also provides that "[n]o culpable mental state is required for conviction under subdivision (a)(2) . . . except the intent to commit the enumerated offenses or acts." T.C.A. § 39-13-202(b). Additionally, the death must occur "in the perpetration of" the enumerated felony. *State v. Hinton*, 42 S.W.3d 113, 119 (Tenn. Crim. App. 2000) (citations omitted). The killing may precede, coincide with, or follow the felony and still be in the perpetration of the felony, so long as there is a connection in time, place, and continuity of action. *State v. Buggs*, 995 S.W.2d 102, 106 (Tenn. 1999). If the underlying felony and killing were part of a continuous transaction with no break in the chain of events and the felon had not reached a place of temporary safety

between the events, felony murder is sufficiently established. *State v. Pierce*, 23 S.W.3d 289, 294-97 (Tenn. 2000). Proof of the intention to commit the underlying felony and at what point it existed is a question of fact to be decided by the jury after consideration of all the facts and circumstances. *Buggs*, 995 S.W.2d at 107.

Especially aggravated robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear" where the culprit uses a deadly weapon and causes seriously bodily injury to the victim. T.C.A. § § 39-13-401(a), -403(a). Further, under Tennessee Code Annotated section 39-12-101(a), a person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:

> (1) Intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;

> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

"A person is criminally responsible as a party to an offense, if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." T.C.A. § 39-11-401(a). Tennessee Code Annotated section 39-11-402(2) provides that an appellant is criminally responsible for the actions of another when, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, [the appellant] solicits, directs, aids, or attempts to aid another person to commit the offense . . . ." The appellant must "'in some way associate himself with the venture, act with knowledge that an offense is to be committed, and share in the criminal intent of the principal in the first degree.'" *State v. Maxey*, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994) (quoting *Hembree v. State*, 546 S.W.2d 235, 239 (Tenn. Crim. App. 1976)). The appellant's requisite criminal intent may be inferred from his "presence, companionship, and conduct before and after the offense." *State v. McBee*, 644 S.W.2d 425, 428 (Tenn. Crim. App. 1982). "An indictment that charges an accused on the principal offense 'carries with it all the nuances of the offense,' including criminal responsibility." *State v. Lemacks*, 996 S.W.2d 166, 173 (Tenn. 1999) (quoting *State v. Lequire*, 634 S.W.2d

608, 615 (Tenn. Crim. App. 1981)). An appellant convicted under a criminal responsibility theory "is guilty in the same degree as the principal who committed the crime" and "is considered to be a principal offender." *Id.* at 171. Criminal responsibility is not a separate crime; rather, it is "solely a theory by which the State may prove the Appellant's guilt of the alleged offense . . . based upon the conduct of another person." *Lemacks*, 996 S.W.2d at 170. Under a theory of criminal responsibility, an individual's "[p]resence and companionship with the perpetrator of a felony before and after the commission of [an] offense are circumstances from which [his or her] participation in the crime may be inferred." *State v. Ball*, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998). No particular act need be shown, and the Appellant need not have taken a physical part in the crime in order to be held criminally responsible. *Id.* The trial court instructed the jury on two theories of criminal responsibility found at Tennessee Code Annotated section 39-11-402, which states:

> A person is criminally responsible for an offense committed by the conduct of another if:
>
> (1) Acting with the culpability required for the offense, the person causes or aids an innocent or irresponsible person to engage in conduct prohibited by the definition of the offense;
>
> . . . .
>
> (3) Having a duty imposed by law or voluntarily undertaken to prevent commission of the offense and acting with intent to benefit in the proceeds or results of the offense, or to promote or assist its commission, the person fails to make a reasonable effort to prevent commission of the offense.

T.C.A. § 39-11-402(1), (3).

In the light most favorable to the State, a rational trier of fact could have found the elements of felony murder and especially aggravated robbery. The proof showed that Appellant, Mr. Robinson, Ms. Taylor, and Ms. Hill planned to rob Mr. Renfroe. When Appellant and Mr. Robinson entered the hotel room, they demanded money, and Appellant fired several rounds from his gun. Mr. Renfroe grabbed Appellant and the two struggled. Mr. Renfroe was shot as he ran from the room. At Mr. Robinson's orders, Appellant chased Mr. Renfroe, shooting at him multiple times. Appellant argues that because he was not present when Mr. Smith or Mr. Robinson were killed he cannot be guilty of felony murder. However, the jury was instructed on the theory of criminal responsibility, as described above. Appellant clearly associated himself with the robbery herein by conspiring with Mr. Robinson and the two women to complete the robbery. Appellant admitted that he fired his

weapon multiple times.  The proof was sufficient to support Appellant's conviction for felony murder.  Appellant is not entitled to relief on this issue.

## *Cumulative Error*

Appellant argues that the cumulative errors of the trial court require a reversal of his convictions.  Because we have found no error on the part of the trial court, Appellant is not entitled to relief on this issue.

## *Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.


_____
JERRY L. SMITH, JUDGE